IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jimmy Dean Jones, a/k/a Jimmy D. Jones, | ) ) ) | C/A No.: 1:12-1033-JMC-SVH |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | |
| Tim Riley, Warden; Laura Caldwell; Gary Lane; Cpl. Betty Rodgers; Lt. Lawrence Levigne;[1] Mrs. Nancy Byrd; Investigator Donald Lane; and Disciplinary Hearing R. L. Turner, | ) ) ) ) ) ) ) | REPORT AND RECOMMENDATION |
| Defendants. | ) ) | |

Plaintiff, proceeding *pro se* and *in forma pauperis*, brought this action, which is construed as brought pursuant to 42 U.S.C. § 1983, alleging the defendant prison officials violated his constitutional rights while incarcerated at Tyger River Correctional Institution ("TRCI"). Before the court is the motion for summary judgment of Defendants Gary Lane, Betty Rodgers, Lawrence Lavigne, and Donald Lane ("Defendants").[2] [Entry #58]. All pretrial proceedings in this case were referred to the undersigned magistrate judge pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motion is dispositive, the undersigned submits this Report and Recommendation for the district judge's consideration.

---

[1] It appears that "Lavigne" is the correct spelling of the defendant captioned as Levigne.
[2] On August 3, 2012, the undersigned recommended defendants Riley, Caldwell, Byrd, and Turner be summarily dismissed from this action. [Entry #30]. As the Report and Recommendation is still pending, service on these defendants has not been authorized and they are still listed in the caption.

I.     Factual and Procedural History

Plaintiff originally submitted a pleading seeking injunctive relief due to the alleged denial of medical treatment, denial of religious services, and denial of institutional employment. [Entry #1 at 5]. Because Plaintiff failed to clearly identify the defendants in the case or provide service documents necessary to advance the case, the undersigned issued an order directing Plaintiff to bring this case into proper form for initial review. [Entry #9]. Plaintiff filed motions to extend his proper form deadline, which the court granted. [Entry #11, 16].

Plaintiff complied with the court's order by submitting an amended complaint on July 9, 2012. [Entry #21]. The amended complaint alleges that on May 3, 2012, defendant Rodgers, the mailroom supervisor at TRCI, "rejected plaintiff's legal mail which consisted of a five-page letter to Senator Reese and also a trial transcript." *Id.* at 3–4. Plaintiff alleges he attempted to discuss the issue with defendant Byrd, the mailroom director at TRCI, but Rodgers "interrupted the meeting and stated she wanted [Plaintiff] to return to [his] dorm." *Id.* at 4. Byrd allegedly directed Plaintiff to wait in "operations," but Rodgers again told Plaintiff to return to the dorm area and "summoned contraband officer Lt. Lawrence Levigne." *Id.* Plaintiff attempted to explain the situation to defendant Lavigne, who allegedly became angry and ordered Plaintiff to the ground. *Id.* Plaintiff alleges that his physical limitations prevented him from moving quickly and that Lavigne knocked him down, "struck [him] in the kidneys, stomped and sprayed [him] in the face and eyes with pepper spray." *Id.* at 4–5. Plaintiff alleges he suffered cuts, bruises, lacerations, and an abrasion over his right eye, and received

treatment by medical staff immediately after the incident. *Id.* at 5.

Plaintiff further alleges that on May 15, 2012, Associate Warden Gary Lane and Investigator Donald Lane called him into a meeting and stated that they were aware Plaintiff had filed an action in district court and warned that Plaintiff's continued litigation or the filing of more grievances would result in his placement in an area where pens, paper, and envelopes would not be available. *Id.* at 7. The next day, Plaintiff received institutional charges resulting from the incident on May 3, 2012. *Id.* Plaintiff claims that the charges were filed beyond the nine-day limit established by prison policy for initiating institutional charges. *Id.* One week later, defendant Turner, disciplinary hearing officer, found Plaintiff guilty of the infraction despite his submission of documents and witness statements. *Id*. at 8. Turner sentenced Plaintiff to thirteen months of lock-up and two years of lost privileges. *Id.* Plaintiff alleges that the charges were falsely leveled against him to justify Lavigne's use of force and pepper spray. *Id.* Plaintiff further claims that the allegedly-unjustified disciplinary conviction resulted from Rodgers' misstatement of facts and Byrd's decision to "change[] her story on the incident report." *Id.* at 10–11. Plaintiff seeks monetary damages and injunctive relief. *Id.* at 14.[1]

II.    Discussion

A.    Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a

---

[1] The undersigned notes that the amended complaint does not allege claims associated with the denial of prison employment or the denial of religious services.

matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

B.     Analysis

Defendants' motion lists several grounds for summary judgment, including Eleventh Amendment immunity, qualified immunity, and Plaintiff's failure to state constitutional claims. However, because the defense of Plaintiff's failure to exhaust his administrative remedies appears to be dispositive, the undersigned has not addressed each additional argument. For the following reasons, the undersigned recommends Defendants' motion be granted based on Plaintiff's failure to exhaust his administrative remedies.

1.  Exhaustion Requirements

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust his administrative remedies before filing a § 1983 action concerning his confinement. Specifically, 42 U.S.C.A. § 1997(e) states: "No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." In *Porter v. Nussle*, 534 U.S. 516 (2002), the United States Supreme Court held that the exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes. In *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006), the United States Supreme Court held that the PLRA exhaustion requirement requires "proper exhaustion." *Id.* The Court stated that "[a]dministrative law requires proper exhaustion of administrative remedies which means using all steps that the agency holds out, and doing so properly." *Id.* (internal quotations and citations omitted).  Failure to exhaust all levels of administrative review is

not "proper exhaustion" and will bar actions filed by inmates under any federal law, including § 1983. *Id.*

The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Woodford*, 548 U.S. 81, 89 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.* Any consideration of administrative remedies pursued after the commencement of the litigation would only serve to frustrate both purposes of the PLRA's exhaustion requirement.

The SCDC's grievance policy was recently delineated in *Sweat v. Reynolds* as follows:

> In order to exhaust the SCDC administrative remedy process, after unsuccessful attempts at informal resolution of the problem(s), (1) an inmate must fill out a Form 10–5 (Step 1 Grievance form) to explain his complaint and give the form to an employee designated by the Warden within fifteen days of the alleged incident; (2) the grievance must then be entered into SCDC's automated system, and the Institutional Inmate Grievance Coordinator ("IGC") notified so that the information in the automated system can be finalized and an attempt to informally resolve it before sending it to the Warden can be made within ten working days from the time the grievance is submitted; (3) the Warden should respond to the inmate in writing within forty days of the Warden's receipt of the Step 1 grievance and then the IGC has five working days to provide the Step 1 response to the inmate; (4) the inmate may then appeal the Warden's response by completing a Form 10–5a (Step 2 Appeal) and submitting it to the IGC within five "calendar days" of the inmate's receipt of the response; (5) the IGC then notifies the Inmate Grievance Branch of the Step 2 appeal and the Branch has another five "calendar days" to get the Step 2 appeal to the responsible SCDC official (the Division Director of Operations) for a response; (6) the Division Director of Operations then has sixty days from

> the day the appeal was received by the IGC at the institution to respond to the Step 2 grievance, and finally, (7) then there is another five days for the IGC to serve the inmate with the Step 2 response. SCDC Policy/Procedure GA–01.12, at §§ 11, 13.1–13.6 (Oct. 1, 2010).

*Sweat v. Reynolds,* C/A No. 9:11-1706-MGL, 2013 WL 593660, *4 (D.S.C. February 15, 2013); *see also Ceo v. Ozmint*, 2006 WL 2850538, at *2 (D.S.C. Sept. 29, 2006) ("This court may take judicial notice of its own records in this prior case.") (citing *Colonial Penn Ins. Co. v. Coil,* 887 F.2d 1236, 1239 (4th Cir. 1989) ("'[t]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records'")).

2.      Plaintiff's Grievances Related to Incidents in Amended Complaint

Here, Plaintiff has not properly exhausted his administrative remedies because he filed his amended complaint before he received SCDC's responses to any of his Step 2 grievances. On May 9, 2012, Plaintiff filed three Step 1 grievances alleging that he had been assaulted by Lavigne on May 3, 2012, that Rodgers had wrongfully refused to accept his legal mail, and that Rodgers opened his legal mail outside of his presence. [Entry #58-7 at 9–10, 15–16, 21–22]. On June 30, 2012, Plaintiff filed Step 2 grievances on all of these issues. *Id*. at 13, 19, 25. None of the Step 2 grievances was resolved on July 9, 2012, the date of Plaintiff's amended complaint. [Entry #21-4].

Plaintiff has also filed three Step 1 grievances alleging that he was charged in an untimely manner with the three infractions stemming from the incident on May 3, 2012. [Entry #58-7 at 29, 31, 35]. Each of Plaintiff's processed Step 1 grievances regarding these infractions was investigated and denied. *Id*. On July 9, 2012, Plaintiff submitted Step 2 grievances indicating that he accepted the warden's decision and considered the

matters closed. *Id*. at 33, 37, 41. Additionally, Plaintiff failed to file any grievances regarding the alleged threats made by Investigator Lane. *Id*. at 7.

Plaintiff has failed to exhaust his administrative remedies because he filed his amended complaint on July 9, 2012, before receiving responses to his Step 2 grievances and before SCDC's deadline to respond had expired.    Plaintiff argues that he has now exhausted his administrative remedies because SCDC's time for responding expired during the pendency of this lawsuit. [Entry #66 at 19–20].   However, Defendants are entitled to summary judgment based on exhaustion because the PLRA requires that prisoners exhaust their administrative remedies prior to filing suit. *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (finding that "prisoners must exhaust 'such administrative remedies as are available' prior to filing suit in federal court challenging prisoner conditions") (quoting 42 U.S.C. § 1997e(a)); *see also Singleton v. Phillipe*s, C/A No. 1:10-1909-RBH, 2011 WL 3841365, *2 (D.S.C. 2011) (noting that failure to exhaust administrative remedies prior to filing suit does not constitute exhaustion under the PLRA).   Therefore, the undersigned is constrained to recommend that Defendants' motion for summary judgment be granted because Plaintiff failed to exhaust his administrative remedies prior to bringing his claims against Defendants.

III.    Conclusion

For the foregoing reasons, the undersigned recommends Defendants' motion for summary judgment be granted and this case be dismissed without prejudice. If the district judge accepts this recommendation, all other pending motions will be rendered moot.

IT IS SO RECOMMENDED.

March 6, 2013                                    Shiva V. Hodges
Columbia, South Carolina                  United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).